UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOANNE CESTARE,

               Plaintiff,

       v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

DECISION & ORDER

15-CV-6045P

## PRELIMINARY STATEMENT

Plaintiff Joanne Cestare ("Cestare") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge.  (Docket # 5).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 7, 8).  For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## BACKGROUND

Cestare protectively filed for SSI and DIB on December 15, 2011, alleging disability beginning on December 15, 2010, due to depression and attention deficit hyperactivity disorder ("ADHD").  (Tr. 192, 197).[1]  On February 9, 2012 and June 13, 2012, the Social Security Administration denied Cestare's claim for benefits, finding that she was not disabled.  (Tr. 78-87).  Cestare requested and was granted a hearing before Administrative Law Judge Connor O'Brien (the "ALJ").  (Tr. 29, 92, 101-18).  The ALJ conducted a hearing on June 14, 2013.  (Tr. 29-77).  In a decision dated June 28, 2013, the ALJ found that Cestare was not disabled and was not entitled to benefits.  (Tr. 11-23).

On December 4, 2014, the Appeals Council denied Cestare's request for review of the ALJ's decision.  (Tr. 1-5).  Cestare commenced this action on January 28, 2015 seeking review of the Commissioner's decision.  (Docket # 1).

## DISCUSSION

### I.   Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's

---

[1]  The administrative transcript shall be referred to as "Tr. __."

conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  When assessing whether a claimant is disabled, the ALJ

must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.

1982) (*per curiam*).  The five steps are:

> (1)     whether the claimant is currently engaged in substantial
>          gainful activity;
>
> (2)     if not, whether the claimant has any "severe impairment"
>          that "significantly limits [the claimant's] physical or mental
>          ability to do basic work activities";
>
> (3)     if so, whether any of the claimant's severe impairments
>          meets or equals one of the impairments listed in Appendix
>          1 of Subpart P of Part 404 of the relevant regulations;
>
> (4)     if not, whether despite the claimant's severe impairments,
>          the claimant retains the residual functional capacity to
>          perform his past work; and
>
> (5)     if not, whether the claimant retains the residual functional
>          capacity to perform any other work that exists in significant
>          numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'"  *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


## II.     Analysis

Cestare contends that the ALJ's determination that she is not disabled is not

supported by substantial evidence and is the product of legal error.  (Docket # 7-2).  Among

other alleged errors, Cestare contends that the ALJ's mental Residual Functional Capacity

("RFC") assessment is flawed because the ALJ formulated the RFC without relying upon any

medical opinion contained in the record.  (*Id.* at 17-19).  I agree.

4

Generally, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue*, 2010 WL 4703599, *11 (W.D.N.Y.) (internal quotation omitted), *report and recommendation adopted*, 2010 WL 4703591 (W.D.N.Y. 2010). Although the RFC determination is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner generally "may not make the connection himself." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (internal quotation omitted). This is particularly true where the record reflects that the claimant suffers from complex serious impairments. *See House v. Astrue*, 2013 WL 422058, *4 (N.D.N.Y. 2013). Additionally, the regulations require that "[t]he RFC assessment . . . include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007) (quoting SSR 96-8P, 1996 WL 374184, *7 (1996)).

In her decision, after setting forth Cestare's RFC, the ALJ summarized the record evidence, including Cestare's testimony and the medical records. (Tr. 16-20). She discussed at length the opinions submitted by Cestare's treating psychiatrist, W. Glenn Jamison ("Jamison"), MD (Tr. 371-77, 413-16), but ultimately determined to give those opinions "very little" weight. (Tr. 19-20). The ALJ also discussed an opinion from Cestare's treating physician, Dora Pita-Acevedo ("Pita-Acevedo"), MD (Tr. 481-85), regarding her physical capabilities and determined to give that opinion "great weight." (Tr. 20). Although non-examining state medical consultants R. Nobel ("Nobel") and Michael Hammonds ("Hammonds"), PhD, provided

5

opinions regarding Cestare's mental RFC (Tr. 378-95, 417), the ALJ did not discuss or cite to these opinions in her decision.  The ALJ explained why she found Cestare to be less than credible and stated that the RFC she assessed was "supported by the substantial medical evidence of record, the claimant's own statements and activities, and the opinion of Dr. Pita-Acevedo.  No further limitations than those set forth in the residual functional capacity above are needed here." (Tr. 20).

Having reviewed the ALJ's decision, I agree with Cestare that the ALJ's mental RFC assessment appears to be based upon the ALJ's lay interpretation of the medical records without reliance upon any medical opinion.  In her decision, the ALJ explicitly accorded "little" or "very little" weight to Jamison's opinions, and nothing suggests that the ALJ accounted for the limitations identified by Jamison in formulating the RFC.  Indeed, the ALJ expressly identified Pita-Acevedo's opinion, which assessed Cestare's physical capabilities, as the only opinion that supported her RFC assessment.

As the ALJ acknowledged, Cestare has been diagnosed with serious mental impairments and has received ongoing mental health treatment to address those mental impairments.  Although the ALJ reviewed and discussed Cestare's treatment records, the ALJ did not rely upon any medical source statement or a consultative examination report to assist her in translating the treatment notes into an assessment of Cestare's mental capacity for work-related activities.  Rather, the decision demonstrates that the ALJ used her own lay opinion to determine Cestare's mental RFC.  This was error and requires remand.  *See Cole v. Colvin*, 2015 WL 9463200, *5 (W.D.N.Y. 2015) ("[b]ecause the ALJ failed to cite to any medical opinions to support her RFC findings, the [c]ourt is unable to determine the rationale for the ALJ's RFC assessment and whether it is supported by substantial evidence"); *Ramos v. Colvin*,

2015 WL 925965, *10 (W.D.N.Y. 2015) (remanding for further development of record where the record demonstrated that claimant suffered from "medically diagnosed mental impairments, received ongoing treatment, and experienced continuing symptoms of depression and post-traumatic stress disorder that could interfere with her ability to complete work-related activities[,]" but did not contain any medical opinion to assist the ALJ in translating treatment notes into mental RFC) (collecting cases); *Hogan v. Astrue*, 491 F. Supp. 2d at 354 ("[b]ecause the ALJ failed to cite to any medical opinion to support his RFC findings, the [c]ourt is unable to determine if the ALJ improperly selected separate findings from different sources, without relying on any specific medical opinion").

The government maintains that remand is not warranted because the ALJ's mental RFC assessment is indeed consistent with Jamison's opinion and further supported by Nobel's and Hammonds's assessments and because the ALJ's rationale may be gleaned from her decision.  (Docket # 8-2 at 13-16).  In essence, the government argues that because the record contains medical opinions that may be considered consistent with the ALJ's mental RFC assessment, this Court should conclude that substantial evidence supports the ALJ's conclusions. This contention is both factually and legally flawed.  As an initial matter, Jamison assessed limitations that are inconsistent with the ALJ's conclusion that Cestare is not disabled.  For instance, Jamison opined that Cestare was unable[2] to complete a normal workday on a sustained basis, was unable to concentrate and attend to a task over an eight-hour period, and was likely to be absent from work as a result of her impairments more than four days per month.  (Tr. 415-16). These limitations appear inconsistent with the ALJ's conclusion that Cestare was able to maintain competitive employment.  *See Ruffino v. Colvin*, 2015 WL 9582704, *5 n.6 (W.D.N.Y.)

---

[2]  In his opinion, Jamison rated Cestare's ability to complete a normal workday on a sustained basis and to concentrate and attend to tasks over an eight-hour period as "poor," which was defined as "[n]o useful ability to function in this area."  (Tr. 414-15).

("[m]issing four days per month due to an impairment precludes a claimant from competitive employment"), *report and recommendation adopted*, 2015 WL 9581786 (W.D.N.Y. 2015); *Patterson v. Colvin*, 2015 WL 5036934, *11 (W.D.N.Y. 2015) ("the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions, to respond appropriately to supervision, coworkers and usual work situations, and to deal with changes in a routine work setting") (quoting SSR 85-15, 1985 WL 56857, *4 (1985)).  Indeed, the vocational expert testified that an individual with the limitations identified in the ALJ's RFC would be unable to maintain competitive employment if she was likely also to be absent from work two or more times per month or to be unable to sustain focus and concentration at work to a degree that she would fall short of weekly work expectations by twenty percent.  (Tr. 71).

Even assuming that the opinions in the record were consistent with the ALJ's RFC assessment, the law does not permit this Court to infer that the ALJ relied upon the medical opinions in formulating her RFC assessment.  Such *post hoc* interpretations of an ALJ's decision are not permitted.  *See*, *e.g.*, *Hall v. Colvin*, 37 F. Supp. 3d 614, 627 (W.D.N.Y. 2014) ("[t]he Commissioner again makes a *post hoc* argument that [the treating physician's opinion] is incorporated into the ALJ's RFC[;] . . . [h]owever, a reviewer of the ALJ's decision cannot determine what, if any, weight was assigned to not only [the treating physician's] opinion, but to any doctor's opinion"); *Kelly v. Astrue*, 2014 WL 3563391, *22 (W.D.N.Y. 2014) ("the ALJ did not articulate either of these rationales in his decision, and the government's attempts to provide a *post hoc* rationale for the ALJ's determination are not a proper substitute for the ALJ's obligation to provide 'good reasons' for the weight accorded to a treating physician's opinion"); *Coleman v. Comm'r of Soc. Sec.*, 2015 WL 9685548, *5 (N.D.N.Y. 2015) ("the ALJ did not

discuss [the treating physician's] opinion beyond the objective medical evidence and this [c]ourt may not 'create post-hoc rationalization to explain the Commissioner's treatment of evidence when that treatment is not apparent from the [ALJ's] decision itself'") (quoting *Martinbeault v. Astrue*, 2009 WL 5030789, *5 (N.D.N.Y. 2009)), *report and recommendation adopted*, 2016 WL 109994 (N.D.N.Y. 2016).  In any event, as discussed above, the ALJ's decision refutes any suggestion that she relied upon Jamison's, Nobel's or Hammonds's opinions in formulating Cestare's mental RFC.  The ALJ explicitly discounted Jamison's opinions, granting them "little" or "very little" weight, and never discussed, much less expressed reliance upon, the opinions submitted by Nobel or Hammonds.  Indeed, in summarizing the evidence that the ALJ found supported the RFC, the only medical opinion she identified was Pita-Acevedo's.

The ALJ's failure to rely on any medical opinion when formulating the RFC is particularly troubling in this case because the ALJ's decision does not articulate clearly the connection between the evidence of record and the mental limitations assessed in the RFC. Although the ALJ thoroughly summarized the record and identified some apparent inconsistencies in Cestare's statements, she did not adequately explain how the evidence of record supported her RFC findings.  Under these circumstances, remand is appropriate.  *Cole v. Colvin*, 2015 WL 9463200 at *5 (remand warranted where "after setting forth [p]laintiff's RFC, the ALJ merely summarized some of the medical evidence in the record but did not discuss how the evidence to which she referred supported her conclusion that [p]laintiff can perform a range of medium exertional work"); *Palascak v. Colvin*, 2014 WL 1920510, *10 (W.D.N.Y. 2014) (remanding where the ALJ's assessment "simply recite[d] [the plaintiff's] testimony and summarize[d] the medical record without tying this evidence to the physical and mental functional demands of light work").

Cestare also challenges the decision on the grounds that the ALJ improperly failed to accord Jamison's opinions controlling weight (Docket # 7-2 at 17-18), improperly found Cestare to be less than credible (*id.* at 24-29), and erred at step four by failing to consider whether Cestare's previous positions were performed at a substantial gainful activity level[3] (*id.* at 29-28).  In light of my determination that remand is otherwise warranted, I decline to reach Cestare's remaining contentions.  *See Erb v. Colvin*, 2015 WL 5440699, *15 (W.D.N.Y. 2015) (declining to reach remaining challenges to the RFC and credibility assessments where remand requiring reassessment of RFC was warranted).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 8)** is **DENIED**, and Cestare's motion for judgment on the pleadings **(Docket # 7)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*

MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       March 4, 2016

---

[3] Cestare also maintains that the Appeals Council erred by failing to grant review based upon an opinion from Emily Moley, Cestare's treating therapist, which was submitted to the Appeals Council after the ALJ had rendered her determination.  (Docket # 7-2 at 23-24).  Whether, and the extent to which, this additional evidence should be considered in connection with Cestare's claim for benefits is a matter that should be addressed by the ALJ on remand.